## The Dunkirk and Allegheny Valley Railroad Company *versus* Mead.

By Act of March 28th 1868, entitled "An Act for the protection of farmers and owners of cattle, horses, sheep and swine, along the line of railroads in the county of Warren," said railroad companies are required to erect and maintain fences along the tracks of their roads and to construct cattle-guards at all the public road-crossings, sufficient to prevent orderly cattle from straying upon said tracks; and by the Act of April 17th 1869, a non-compliance with these requirements renders a company liable for the value of the animal injured or killed by such neglect. The plaintiff was pasturing his cow upon land near to, though not directly abutting upon the railroad. The cow escaped from the enclosure and passing out upon a public road, strayed on to the track of the railroad, where there were no guards, and was killed. *Held,* that plaintiff was entitled to recover.

June 4th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   WOODWARD, J., absent.

Error to the Court of Common Pleas of *Warren county:* Of May Term 1879, No. 52.

Case by Stephen Mead against the Dunkirk and Allegheny Valley Railroad Company, to recover the value of a cow killed by one of defendant's trains.

By a special act, approved March 28th 1868, Pamph. L. 514, railroad companies in Warren county are required to fence their roads "for the protection of farmers and owners of cattle, &c., residing along the line of such railroads," and also, "to construct sufficient cattle-guards at all road-crossings;" and by the Act of April 17th 1869, the failure to perform these duties, renders the railroad company liable for the value of cattle, &c., injured in consequence of such neglect. Mead lived about half a mile from the railroad company's track and owned no land along its line, but pastured his cow in the field of one Dalrymple, south of and near the railroad station, but not adjoining its land or right of way. Between this pasture and the railroad company's land at the nearest point was the public highway, fenced on both sides, and between this pasture and the railroad track at the point where the cow was killed a fenced field intervenes. The public road crosses the railroad just east of the depot. There is a side track extending some distance east and west of the depot, and the land east of the depot is used for yard and shipping purposes, piling ties and lumber, loading and unloading freight, and the track through this yard and east of it nearly to the bridge across Andrew's run, as well as west across the public road, is used by the railroad company in switching, arranging and making up trains, and more or less of this work is done by night. To put in cattle-guards where the public road crosses the railroad, or at any point where they would be crossed in switching and making up trains, it was alleged, would seriously endanger the lives of the trainsmen and railroad employees.

[Dunkirk and Allegheny Railroad Co. v. Mead.]

The entire south side of the railroad company's right of way and yard, the side toward the Dalrymple pasture, is well fenced. The entire north side of the right of way and the yard are also well fenced. The part of the west end of the company's yard north of the railroad track, is left unfenced for the convenience of the public, in passing in and out with freight, ties, &c. The plaintiff's cow is supposed to have escaped in some way from the pasture into the public highway, and to have strayed thence through defendant's yard, on to and along the track east toward the bridge, and was struck a few rods west of the bridge.

At the trial before Church, P. J. (of the Thirtieth Judicial District), the defendant submitted, inter alia, the following points, to which are subjoined the answers of the court:

1. The obligation on the defendant, under the statute, to make and maintain fences, applies only as against owners or occupiers of the adjoining close; and the plaintiff not residing nor occupying land along the line of defendant's road, cannot assert this obligation nor recover for any loss incurred by reason of any neglect thereof by defendant.

Ans. "First part to semicolon answered in affirmative. Second part in negative, if the jury believe that plaintiff was then occupying Dalrymple's farm as laid in map in evidence."

2. The defendant was not bound to build fences, or put in cattle-guards at any point where,.to do so, would endanger human life, or seriously impede the operations of the road; and is not liable for injury to any cattle straying on its tracks by reason of the lack of fence or cattle-guards at such points.

Ans. "As per general charge."

In the general charge, the court, inter alia, said: ["Mr. Mead testified that he had rented pasture of Mr. Dalrymple, and kept his cow there, and turned her in that day, and he knew nothing else of her until she was killed. If that be so, and you believe that his cow, within the meaning of this act, did casually break out of its proper enclosure upon the highway, he is guilty of no negligence in the cow being upon the highway.] * * * [This railroad was constructed after the Act of 1868 was passed, and they were required to construct sufficient fences and cattle-guards in the manner pointed out by this act. In default of that, the owner of any cattle may recover damages for the killing, in consequence of such a cattle-guard not having been placed in the place pointed out by the Act of Assembly.] It is alleged on the part of the railroad company, that this plaintiff does not come within the provisions of this Act of Assembly, because he did not occupy the land along the railroad track. It appears by this draft and by evidence, that he was pasturing his cow in Dalrymple's pasture. This pasture comes down, as appears by this draft, to two highways; one of the highways running across the railroad, right at

[*Dunkirk and Allegheny Railroad Co. v. Mead.*]

the depot. It appears in evidence, that the defendant's track is fenced the whole distance, according to the Act of Assembly, except at a point opposite the depot, where the track-yard of the defendant's railroad abuts against this highway, and there is no fence there, neither is there any cattle-guard. There is a fence at the east end of the yard proper where there are switch-gates, but there are no cattle-guards; and it is evident that this beast had gone down through towards the bridge easterly, and past the yard proper, and there it was killed.

["Now, we say to you, that it was the duty of this railroad company to build a cattle-guard, either at this railroad crossing, or at the eastern end of their yard.] If it was impossible for the railroad company to transact its ordinary business by maintaining this fence at the road crossing proper, it was their duty to put a cattle-guard at the eastern end of the yard. If you believe they could do so without seriously interfering with the ordinary business, they were guilty of negligence, or rather of violation of the Act of Assembly in not doing so. So, in our view of the case, we cannot answer the defendant's points exactly, as he has asked us to say.

["We say, that Dalrymple's field is sufficiently close to the railroad to come within the provisions of this Act of Assembly.] The simple fact of the highway being between the pasture-field and the right of way of the railroad, does not relieve the company from the obligations of this Act of Assembly. If you believe that the exigencies of the railroad business prevented them from building a fence or a cattle-guard immediately at the crossing, they should have built a cattle-guard at the first convenient place."

The verdict was for plaintiff for $62.75. The defendant took this writ and alleged that the court erred in the answers to the foregoing points, and in the portions of the charge noted in brackets above.

*Brown & Stone*, for plaintiffs in error.—The plaintiff bases his claim on the special act, and he must show affirmatively he is within its provisions: 1 Redf. on Railways 496; Illinois Central Railroad Co. v. Williams, 27 Ills. 48. The act only inures to the benefit of the owners of a close adjoining the railroad: Jackson v. Rutland and Burlington Railroad Co., 25 Vt. 150; 1 Redf. Am. Railway Rep. 351; Ricketts v. The E. & W. India Docks and Birmingham Railway Co., 12 Eng. L. & Eq. Rep. 520; Manchester, Sheffield and Lincolnshire Railway v. Wallis, 25 Id. 373; Towns v. Cheshire Railroad Co., 1 Foster's Rep. 363; Cornwall v. Sullivan Railroad Co., 8 Id. 161; Chapin v. Sullivan Railroad Co., 39 N. H. 53; Enright v. S. F. & S. J. Railroad Co., 33 Cal. 236; Woolson v. Northern Railroad Co., 19 N. H. 267; Mayberry v. Concord Railroad Co., 47 Id. 391; Little v. Lathrop, 5

[Dunkirk and Allegheny Railroad Co. *v.* Mead.]

Greenl. 356; Rust *v.* Low, 6 Mass. 90; Lawrence *v.* Combs, 37 N. H. 331. Railroad companies are not responsible for damage occurring to domestic animals from want of fence or cattle-guards at points which do not properly admit of being fenced, or of the building of cattle-guards: 1 Redf. on Law of Railways 494; Indianapolis and Cincinnati Railroad Co. *v.* Oestel, 20 Ind. 231; Indianapolis and Cincinnati Railroad Co. *v.* Kinney, 8 Id. 402; Davis *v.* Burlington and Missouri River Railroad Co., 26 Iowa 549; Galena and Chicago Union Railroad Co. *v.* Griffin, 31 Ill. 303; Packard *v.* Illinois Central Railroad Co., 30 Iowa 474.

*Clark & Noyes*, for defendant in error.—The word "adjoining," does not occur in the Act of 1868. The right to enforce it is not restricted to any particular class of persons; "any person" may give the notice or build the fence or cattle-guard if the company do not. The language used in the title is " along the line," which means sufficiently near to be within the mischief to be prevented, which was manifestly dangerous collisions between animals and moving trains. It is a general police regulation, incidentally, if not principally intended to protect the public, like the special act for Erie county, which was so interpreted in Pennsylvania Railroad Co. *v.* Riblet, 16 P. F. Smith 164. Only great inconvenience or danger could excuse the company from a literal compliance with the act. They would be bound to comply as nearly as the circumstances would permit. The jury have found that they could have placed a cattle-guard at the east end of the yard, without inconvenience or danger. The plaintiff's cow was killed at a point beyond where this guard should have been. The plaintiff's recovery is not defeated by the fact that his cow came upon the track from the highway. The action is not based upon negligence but upon the statute. This is remedial and should be liberally construed: Pennsylvania Railroad Co. *v.* Riblet, *supra;* Tracy *v.* Troy and Boston Railroad Co., 38 N. Y. 433. It provides for cattle-guards at all road crossings to prevent cattle from straying upon the track. The cattle-guard would only be effectual against animals in the road. The Court of Appeals of New York, have decided that railroad companies are liable under a similar statute, although the cattle are straying in the highway or trespassing on the adjoining field: Corwin *v.* New York and Erie Railroad Co., 13 N. Y. 42; Shepard *v.* New York and Erie Railroad Co., 35 Id. 641; Bradley *v.* Railroad Co. 34 Id. 427.

Mr. Justice GORDON delivered the opinion of the court, June 23d 1879.

This case turns upon the interpretation of the Act of 28th of March 1868, which requires railroad companies in the county of Warren to erect and maintain fences along the tracks of their roads

[Dunkirk and Allegheny Railroad Co. *v.* Mead.]

and to construct cattle-guards at all the public road crossings, suffi-
cient to prevent orderly cattle, horses, sheep and swine from stray-
ing upon said tracks.

The defendant contended, and so asked the court to charge, that
the plaintiff's case did not come within the provisions of this act,
because he did not occupy land immediately adjacent to the rail-
road. This the court refused to do, saying that as the plaintiff was
depasturing his cow upon land near to, though not directly abutting
upon, the railroad, it was sufficient, and if the cow escaped from the
enclosure without any default on his part, and was killed in conse-
quence of the neglect of the company in not fencing its track
according to the terms of the statute, he was entitled to recover.
In this we discover nothing wrong. It is true the act recites that
it is for the protection of farmers and owners of cattle residing
*along the line* of any railroad in the county of Warren. But here,
first, it is obvious the intent is to protect all owners of live stock,
whether farmers or other persons; whether, therefore, they own or
occupy land or not is of no consequence; and hence, also, in order
to give proper force to this intent, we must construe the words
"along the line of," to mean in the vicinity of; otherwise only
such stock-owners as own or occupy land adjoining the lines of
railways would be protected; and so even those who were in the
lawful occupancy of highways crossing the defendant's improve-
ments, unless they were adjoining landowners, would not be within
the terms of the act. This, however, would limit the act not to
stock-owners, or even to landowners generally, but to such only as
happened to have or occupy lands adjoining railroads. Such an
interpretation as this, since it accords neither with the words nor
spirit of the act, cannot be the true one.

But again, a construction which would determine that a tract of
land did not lie along the line of a railroad because, as in the
present case, a public highway intervened, would be too narrow for
practical purposes, and would not accord with the common under-
standing and acceptation of those words. It would, in fact, amount
to the abrogation of a wise law, designed not only for the protec-
tion of the property of persons residing in the vicinity of railroads,
but also for the protection of the limbs and lives of those travelling
over or using such railroads.

A construction such as this we are not prepared to adopt; on
the other hand, that of the learned judge of the court below seems
to us much the better of the two. He has not only properly con-
strued this act, but, in all other respects, has tried this case fairly,
and has withheld nothing from the defendant to which it was justly
entitled.            Judgment affirmed.